Argued February 10, reversed and remanded March 17, petition for rehearing denied April 12, 1977

# YOSEMITE INSURANCE COMPANY, *Appellant,*
## *v.*
## MEISNER, *Respondent.*
## (No. 406-198, SC 24417)

561 P2d 185

James E. Griffin, Portland, argued the cause for appellant. With him on the briefs was Williams, Stark, Hiefield, Norville & Griffin, P. C., Portland.

Jeffrey R. Spere, Portland, argued the cause for respondent. With him on the brief was Morrison, Dunn, Cohen, Miller & Carney, Portland.

Before Denecke, Chief Justice, and Holman, Howell, and Bradshaw, Justices.

HOLMAN, J.

## HOLMAN, J.

Plaintiff, an insurance company, brought a declaratory judgment proceeding against defendant, its insured, to determine whether its policy of garage liability insurance covered an accident in which defendant was involved. Plaintiff appeals from a judgment that the policy covered defendant's accident.

Defendant operated an automobile repair shop. A friend came to defendant's place of business with a person who wanted to use defendant's welding equipment. Defendant's friend was operating his 1966 Ford Mustang automobile. It had a transmission with four forward speeds, but the reverse gear was defective and the transmission had to be replaced. While the friend waited for his passenger to use the welding equipment, a discussion ensued concerning the effectiveness of a four-speed transmission as against a three-speed transmission. Defendant had in his possession an identical automobile with a three-speed transmission which he had just repaired for a customer. As a result of the discussion, defendant and his friend drove the respective vehicles out onto the street to see which one of the two automobiles had the more effective transmission. While the comparison was being made, defendant became involved in a serious accident with two other vehicles.

The policy had an exclusion which provided:

"This insurance does not apply * * * to bodily injury or property damage arising out of the * * * operation * * * of any * * * automobile * * * while being used in any prearranged or organized racing, speed or demolition contest or in any stunting activity or in practice or preparation for any such contest or activity, * * *."

The trial court made the following findings of fact, which plaintiff does not question:

"6. Meissner [defendant] and Aust [his friend] left the shop before the accident with the previously arrived at understanding that they were going to accelerate the two cars to compare the performance of the Hunter

[owner of vehicle which defendant was driving] 3 speed transmission with Aust's 4-speed transmission.

"7. When Meissner's Mustang struck another vehicle and then left the street and hit Penrod, Meissner and Aust had been trying to out accelerate or outrun one another at a high speed in a residential area."

Plaintiff assigns as error the following conclusion of law:

"3. The activity in which Meissner and Aust were engaging was not a "prearranged or organized racing, speed or demolition contest."

Because plaintiff has not questioned the correctness of the findings of fact, the only issue is one of law, which is whether the trial court's conclusion is proper when the factual findings above set forth are taken into consideration. The record does not disclose the basis for the trial court's conclusion, but it must be assumed that it concluded that the facts as found did not constitute a racing or speed contest as contemplated by the policy exclusion. Therefore, the first issue is whether the rapid acceleration of the vehicles to a high speed to compare the performance of the two transmissions constitutes racing as contemplated by the policy exclusion. Defendant's argument is, as follows:

"Plaintiff argues that this finding of fact is tantamount to a finding of racing. Defendant disagrees. Had the trial court intended to find that Aust and Meisner were racing, it would have been a simple matter to specifically so state. Where the question of whether Aust and Meisner were racing was so crucial and so hotly disputed, the action of the trial court in not finding Aust's and Meisner's conduct to be racing but instead finding that they were trying to 'out accelerate or outrun one another' is significant.

"Defendant submits that the above finding is closer to a finding that Aust and Meisner were not racing. Since plaintiff has conceded that the trial court's findings of fact are supported by the evidence, such a finding would seem to demand a conclusion that the racing exclusion does not preclude coverage in this case."

[ 522 ]

Defendant's argument does not meet the ultimate issue; *i.e.,* was the trial court's legal conclusion that the participants were not racing a proper one in view of the factual findings? The finding of whether or not they were racing as contemplated by the policy is a legal conclusion involving contractual interpretation and is not a finding of fact. It is our opinion that pitting the acceleration of one transmission against the other is a race or speed contest. The following definition of a race was applied to a similar exclusion in *Universal Underwriters Company v. Semig,* 26 Mich App 254, 182 NW2d 354, 356 (1970):

> "A race is an intentional competition in respect to some phase of locomotion. The dominant characteristic of a race is the awareness or intent of competition in respect to speed and distance to prove superiority in performance in some respect."

The purpose of the exclusion is to remove from coverage situations in which an automobile is not usually found and which present additional hazards; *i.e.,* contests in which speed is involved and in which preoccupation with the contest may result in the taking of chances which would not otherwise have been taken. See *Alabama Farm Bureau Mut. Cas. Ins. Co. v. Goodman,* 279 Ala 538, 188 So2d 268, 270 (1966). Danger from these sources still exists even though the contest is ostensibly between two pieces of equipment. The risk is of the kind the exclusion was intended to cover.

■■ Another issue is whether the conduct was prearranged as contemplated by the policy. The necessity that it be prearranged is to delete from the exclusion spontaneous, spur-of-the-moment racing activity as differentiated from that which is planned in advance. *Detroit Automobile Inter-Insurance Exchange v. Bishop,* 24 Mich App 90, 180 NW2d 35 (1970) (evidence of prearrangement found to be inadequate). Defendant contends that a "prearranged" race is one in which the activity is of a formal, commercial nature. He cites as authority for such a conclusion

*Country Mutual Insurance Company v. Bergman,* 38
Ill App2d 268, 185 NE2d 513, 514-15, 517-18 (1962), in
which the court said that

> "* * * said exclusion refers solely to prearranged
> races or tests of speed such as stock car races or sports
> car races on a regularly laid out track and set at a
> specified time, and that said exclusion in law refers only
> to automobiles operated in such a sports contest for
> which profits, awards and gains are available to the
> winner."

We do not believe the case is applicable here because of
the difference in the policy language. The policy here
provides, "any prearranged or organized * * * con-
test," whereas the language in the cited case was, "any
prearranged * * * test." It is readily apparent from
the quotation in the Illinois court's opinion that
"prearranged" was being equated with "organized." It
is impossible to equate the two words in the present
policy because the language is "prearranged *or* or-
ganized." If we were to construe "prearranged" as the
Illinois court construed the term, the language of the
present policy would read "organized or organized." It
is obvious that the policy language contemplated
"prearranged" to mean something other than "or-
ganized." When given its normal interpretation, the
term must apply to something which is contemplated
in advance but which is not necessarily of a formal or
organized nature.

In addition, the decision in *Bergman* was based
upon the proposition that because the particular exclu-
sion was linked with two excluded *business* uses, *i.e.,*
use as a public conveyance and rental or lease to
others, the racing exclusion must have been intended
to be limited to business or commercial racing. The
exclusion, it was said, had no application in that case
because the vehicle was not being put to a business use
at the time of the accident. Whatever may be said for
the court's rationale, which is tenuous, at best, it
should not affect our decision here. In the present case,
the racing at the time of the accident was for a

business purpose and was so found by the trial court. There was evidence that defendant was participating in the contest in the hope of selling his friend a three-speed transmission if defendant could demonstrate its superiority. We believe the language of the Illinois court, previously quoted, limited the exclusion to stock and sport car races because the court could visualize racing in a commercial context only as competition in an organized race. It had no occasion to consider whether the exception excluded business uses connected with other than formally organized racing.

Defendant also argues that the activity immediately preceding the accident was entirely spontaneous and "not one prearranged." He argues:

"* * * Considering for the purposes of this argument that finding of fact number 7 is a finding that Aust and Meisner were racing at the time of the accident, the fact that the preceding finding of fact only states that the prearrangement was to compare the two transmissions, it is submitted that the court found that any idea of racing arose after Aust and Meisner left Meisner's shop and was an impulsive act and was not one prearranged."

If it was the trial court's intention to find that the activity immediately prior to the accident was an impulsive act, it failed to make such a finding. It is possible to argue as defendant does because of the court's failure to find one way or the other whether the participants had discontinued comparing the accelerations of the transmissions or were merely engaged in spur-of-the-moment activity. If the trial judge thought they had ceased their prearranged activity, surely he would have made a finding of such elementary importance. It is our conclusion that his decision was based upon his belief that the comparison of the transmissions was not racing as contemplated by the policy instead of upon his belief that the participants had ceased their prearranged activity.

■ It would be proper to send the case back to the trial judge to make a finding on whether defendant and his friend had terminated their prearranged activity by

[ 525 ]

the time of the accident, except that there is no evidence from which he could make such a finding. Defendant signed a statement for plaintiff to the effect that he and his friend had finished their contemplated action, but he did not so testify under oath at trial or in his deposition. The only testimony was to the contrary. At the time of the accident, defendant was passing his friend on their return to defendant's place of business. The friend testified in his deposition, as follows:

"Q. You both knew where you were going; you were going to wind up at the 9th Street garage [defendant's place of business]?

"A. Right.

"Q. You had no particular appointments for some later activity after you got back to the garage?

"A. No.

"Q. And you didn't have to get back to the garage at any particular time?

"A. No.

"Q. Then what was the reason for the passing, if you know?

"A. Passing of each other?

"Q. Yes, sir.

"A. It was just, oh, just what you call a game or a test between the transmissions, see who could wind further in second gear, and stuff like this."

The judgment of the trial court is reversed and the case is remanded for the entry of a judgment that plaintiff's policy affords no liability coverage for defendant's accident.